**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 9, 2020**

# In the Court of Appeals of Georgia

A19A2154.  KEEN  v.  GEORGIA  SOUTHERN  &  FLORIDA  RAILWAY COMPANY.

MERCIER, Judge.

Richard Keen filed a personal injury lawsuit pursuant to the Federal Railroad Safety Act ("FRSA"), 49 USC § 20101 et seq.[1], and the Federal Employers Liability Act ("FELA"), 45 USC § 51 et seq., against his employer, Georgia Southern & Florida Railway Company (the "Railroad"). The trial court granted the Railroad's motion for summary judgment, and Keen appeals. For the following reasons, we reverse in part and affirm in part.

---

[1] Specifically, Keen argues that the Railroad violated 49 CFR § 213.33, a FRSA regulation. See *Gordon v. New England Central R.*, No. 2:17-cv-00154, *11 (II) (B) (3) (2019 WL 5084160) (D. Ver., Oct. 2019).

"On appeal from the grant of summary judgment the appellate court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Georgia Southern & Florida R. v. Peters*, 284 Ga. App. 139, 140 (643 SE2d 786) (2007) (citation and punctuation omitted).

Viewed in the light most favorable to Keen, the record shows the following. On November 6, 2013, Keen was working as a conductor for the Railroad. At the time of the incident, Keen was at his regular job assignment at the Langdale Yard and was moving cars to the Valdosta railroad track.

While he was moving cars, Keen saw two of his supervisors observing him and thought that they were harassing him and were "out there to fire [him.]" He decided to stop the train to give his supervisors "a job briefing." Following his discussion with his supervisors, Keen received a call over the radio telling him that another train was coming through and that he needed to return to his train. Keen then turned and "walked through a driveway." This was a different route than he had taken to reach his supervisors, but it was a path that he walked "[j]ust about every day." While he was walking, Keen observed a "dried-up mud puddle." Although Keen walked to the

outside of the puddle, he slipped due to "a type of mud" and "drainage." He claims that the slip caused him to be injured. Keen testified that he had previously told "the train masters," as they were "fixing track and stuff," that there were "walking hazards" in the area where he fell.

The Railroad filed a motion for summary judgment arguing that it was not liable for violating FRSA because, inter alia, there was no evidence that the drainage facility was improperly maintained or obstructed. It further argued that Keen's claim under FELA failed because he was unable to establish the elements of negligence. The trial court granted the motion, and this appeal followed.

1. Keen argues that the trial court erred in finding that he failed to state a negligence claim under FELA. Under FELA, "railroad companies are liable for injuries to their employees that result in whole or in part from company negligence." *Norfolk Southern R. v. Schumpert*, 270 Ga. App. 782 (608 SE2d 236) (2004); see 45 USC § 51. A railroad's violation of a safety statute, is negligence per se under FELA. See *CSX Transp. v. McBride*, 564 US 685, 703 (III) (B), n. 12 (131 SCt 2630, 180 LE2d 637) (2011).[2] "Congress enacted the FRSA in 1970 to promote safety in every

---

[2] "As a general matter, FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal." *CSX Transp. v. Howell*, 296 Ga. App. 583, 586 (1) (675 SE2d 306) (2009).

3

area of railroad operations and reduce railroad-related accidents and incidents."
*Norfolk Southern R. v. Zeagler*, 293 Ga. 582, 597 (3) (748 SE2d 846) (2013) (citing
49 USC § 20101, punctuation omitted).

> While there is some overlap between the scope and purpose of FRSA
> and FELA - as both are directed to railroad safety - the statutory
> schemes approach each of their purposes from significantly different
> perspectives. The regulations promulgated under FRSA are the
> minimum safety requirements for railroad track that is part of the general
> railway system. FRSA's purpose - to promote safety in every area of
> railroad operations and reduce railroad-related accidents and incidents -
> is entirely consistent with FELA's goal of promoting the safety of
> railroad employees by facilitating their ability to recover for injuries
> caused by a railroad's negligence.

*Norfolk Southern R. v. Hartry*, __ Ga. ___ (837 SE2d 303, 309 (2) (e)) (2019)
(citations and punctuation omitted).

FELA is "an avowed departure from the rules of the common law. FELA was
a response to the special needs of railroad workers who are daily exposed to the risks
inherent in railroad work and are helpless to provide adequately for their own safety."
*Schumpert*, supra at 784 (1) (citation and punctuation omitted).

> While the FELA does provide for a cause of action against the employer
> for negligent conduct which causes an injury to an employee, the Act

4

does not make the employer an insurer of the employee for any injury he receives. Nevertheless, the employer has a duty to provide the employee a reasonably safe workplace which includes safe conditions, tools, facilities, and supervision.

*Bowles v. CSX Transp.*, 206 Ga. App. 6, 6 (1) (424 SE2d 313) (1992); (citation and punctuation omitted). Furthermore, FELA "should be liberally construed in favor of injured railroad employees in order to further its remedial goal and humanitarian purposes." *Zeagler*, supra at 596 (2) (e) (citation and punctuation omitted).

"To bring a claim under FELA, a plaintiff must prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation." Id. at 586 (2) (citations and punctuation omitted). "Whether the defendant has a duty to the plaintiff is a question of law to be decided by the court. The other three elements - foreseeability, breach, and causation - are questions of fact to be decided by a jury, assuming that there is evidence in the record creating a genuine issue for trial." Id. (emphasis omitted). Under FELA

the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence *played any part, even the slightest*, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes.

5

*Bowles*, supra at 7 (1) (citation and punctuation omitted; emphasis in original). "In other words, trial by jury is part of the remedy in FELA cases." *Kelson v. Central of Georgia R.*, 234 Ga. App. 200, 203 (1) (a) (505 SE2d 803) (1998) (citations and punctuation omitted).

The Railroad had a duty to provide Keen with a "reasonably safe workspace." See *Bowles*, supra at (1). Keen alleges that the Railroad violated 49 CFR § 213.33, which provides that "[e]ach drainage or other water carrying facility under or immediately adjacent to the roadbed shall be maintained and kept free of obstruction, to accommodate expected water flow for the area concerned."

To support his claim that the Railroad breached a duty by failing to keep the drainage free from obstruction, Keen points to an affidavit from Joe Lydick, a railroad safety consultant. Lydick opined that the Railroad was not in compliance with 49 CFR § 213.33 as the ditch and the pipe near where Keen fell "were full of vegetation and silt and by the appearance of the mud around the switch and roadway was not draining the water properly away from the roadbed."

In its appellate brief, the Railroad claims that Lydick's affidavit "must be disregarded as rank speculation" because his opinion relied upon the site inspection he conducted two and a half years after the incident. However, the Railroad did not

6

challenge Lydick's qualifications or the admissibility of his testimony at the trial court level. See *Zeagler*, supra at 585 (1) (c); *Toyo Tire North America Mfg. v. Davis*, 299 Ga. 155, 157 (1) (787 SE2d 171) (2016). Furthermore, the trial court did not make a ruling or even opine about the admissibility or credibility of Lydick's affidavit in its order granting summary judgment. Compare *Udoinyion v. Michelin North America*, 313 Ga. App. 248, 251 (1) (721 SE2d 190) (2011) (trial court's ruling that plaintiff's expert affidavits in response to the defendant's motion for summary judgment were "totally inadequate" was not in error given their "paucity"). Although the Railroad agues that the methodology employed to arrive at the conclusions in Lydick's affidavit raises questions, "[a]n appellate court should not conduct the analysis of [an expert's] methodology in the first instance." *Toyo Tire North America Mfg.*, supra at 160 (2).

"Consequently, we will consider only whether the record as we now find it - including the opinions of the expert - is enough to get [Keen] past summary judgment." *Toyo Tire North America Mfg.*, supra at 161 (2) (citation and punctuation omitted). In addition to Lydick's affidavit, Keen cited "drainage" and mud as being a cause of his slip. Lydick's affidavit and Keen's testimony suffice to create a question of fact as to whether the Railroad committed negligence per se by violating

7

49 CFR § 213.33. See generally *Bowles*, supra at 7 (1); *Toyo Tire North America Mfg.*, supra at 162 (2); *Zeagler*, supra at 587 (2) ("FELA has a relaxed negligence per se standard, which makes it easier for a FELA plaintiff to survive summary judgment than for a plaintiff bringing a common-law negligence claim."); *Correll v. Consolidated R.,* 266 FSupp2d 711, 714 (N. D. Ohio 2003) ("[I]t is well-settled that the FELA requires a finding of negligence per se when there has been a violation of a safety statute specifically aimed at the railroad industry") (citation and punctuation omitted). Keen has put forth enough evidence to survive summary judgment on the duty and breach elements of his claim. See *Goldstein, Garber & Salama v. J. B.*, 300 Ga. 840, 844 (2) n. 5 (797 SE2d 87) (2017) (Negligence per se supplies the duty and breach of duty elements of a tort).

As to the remaining elements of Keen's FELA claim, foreseeability and causation, Keen has put forth evidence that he told his supervisors of the walking hazards in the area, and that this failure caused him to slip and his subsequent injuries. Questions of fact, therefore, remain for the jury. See *Zeagler*, supra at 586 (2). The trial court erred in granting the Railroad's motion for summary judgment on Keen's FELA claim. See generally *Bowles*, supra at 7 (1).

2. As discussed in Division I, FRSA imposes a duty on the Railroad that may give rise to a FELA action. See *Tubbs v. BNSF R. Co.*, 562 SW3d 323, 340 (1) (B) (Mo. App. 2018). However, "FRSA does not create a private right of action; enforcement powers under the statute are vested solely with the Secretary of Transportation and, under certain conditions, the States or the Attorney General." *Hartry*, supra at 307 (2) (b)) (2019) (footnote omitted). To the extent that Keen attempts to argue a separate cause of action under FRSA, such a claim fails. See *Hartry*, supra. As such, the trial court's grant of summary judgment on Keen's claim for damages under FRSA is affirmed.

*Judgment reversed in part, affirmed in part. Barnes, P. J., and Brown, J., concur.*